Good morning, Your Honors. Ashish Desai on behalf of the appellants. I'd like to reserve three minutes of my time and I'll keep track of my time. The procedural violation at issue here meets Article III's concreteness standard for two independent reasons. First, the intangible harm that the Fair Credit Reporting Act was trying to protect bears a very close resemblance to the type of harm that has traditionally been protected by both American and English courts. And secondly, even if it does not, Congress was well within its rights under Article I of the Constitution to create an interest in a modern intangible harm for which damages are particularly difficult to assess. We believe that the Article III analysis in this case flows directly from the U.S. Supreme Court's decision in Spokio. The problem with the court underneath is that the court underneath misapplied the test under Spokio in this important way. The analysis under Spokio is not as to the individual. Spokio teaches us that the analysis is as to the alleged type of harm that has been alleged. Even if we look at the type of harm, and let's just assume that we were to go with you on that, Ruiz completed a different type of application than the other two, right? That's correct, but once again, I think you're falling into... Well, all I'm trying to do is I'm just trying to make sure that I understand what your argument is, because the other two had applications where, if you will, the disclosure information may have been in the midst of it, but the Ruiz-completed application was in a different place. He signed the FRCA disclosure a month later, and so therefore, as long as the disclosure suggests what it had to say, I'm trying to figure out why, then, he has any standing. Because, again, Luan teaches us that an injury, in fact, is the invasion of a legally protected interest that is both concrete and particularized. Well, I understand that, and so you, therefore, are arguing that Torres and Guerrero had it in the middle of the hole, and that they were confused. I'm having a tough time understanding how Ruiz makes the same allegation with as much. With respect, Your Honor, that is the wrong analysis. As Luan teaches, the key to the phrase that I just discussed on injury, in fact, is the legally protected interest. The Supreme Court teaches us we look at the interest. We do not look at the individual. That is what Justice Alito said in Spokio. So if the interest is concrete, and so long as you allege a violation to that interest, and if you decide that Congress had a legally protected interest that's concrete, no more is required. In fact, that is the key to the analysis here. Well, what they have to show is that there's a genuine question of material fact in order to get through summary judgment as to whether they suffered a concrete injury as a result of the alleged violation. Well, the concrete injury, I guess, I can understand what one might argue as to Torres and Guerrero, but as to Ruiz, I'm trying to figure out how there could have been a concrete injury in this particular situation when he signed a different disclosure at a different time, and at that point, I guess, the district court could properly disregard his declaration. Judge Smith, you are concentrating on the actual tangible harm here. As Justice Wilson said, you're concentrating on the real-world harm. This is precisely the argument that Spokio made at the U.S. Supreme Court and lost. Didn't Judge Alito say that's precisely what you have to show? No. Justice Alito said that intangible harms can be concrete. There's one thing it said is that intangible harms provide just as much concreteness. It has to have somehow undermined it in some way, in some concrete way. For example, in our Said case, the plaintiff in that case said that, but for the, but for this, well, this was all inferred in a generous way because it was on a motion to dismiss, but it said, he said, for example, that, and the court inferred it rather, that but for the true waiver of liability and the warning, he would not have signed it. Your clients didn't say they would not have signed it. Again, that is. In fact, in their declarations, all of which were identically worded, they said, I do not know if I would have signed the documents. Doesn't the deviation from the, you call it that, have to affect the right, which is the right to control your financial information in some meaningful way? No, Judge Corman, and here's why. The Supreme Court, Justice Alito said in Spokio, is that you are concentrating on the actual harm. This is precisely the argument that Spokio made at the U.S. Supreme Court and lost. They say there must be some tangible harm. There must be some real-world harm. But it was lost. In fact, the Ninth Circuit's opinion was reversed in Spokio and remanded. We understand that. In favor and against Spokio, the Ninth Circuit. And on remand, Judge O'Scanlan said, in other words, he said that you do not look at the individual. You look at the concrete interest that's being alleged. The key is once you meet, once the Court determines that Congress had a substantial interest in a concrete right, that is the end of the analysis. No further actual damages are required. And the case you're talking about, Judge O'Scanlan, if I remember these cases correctly, it was false information. In that case. In other words, the information was either, I believe it was false, but it could be wrong, or it could have been one of the cases in which it wasn't for an authorized purpose. That was the NIAB case, I believe, Your Honor. This one had to, it said at the end, it was dealing with 1861A. We're dealing with 1861B, dealing with what employers had to do. This one dealt with what credit reporting agencies had to do. And in Spokio, they argued exactly what you're arguing. They're saying, look, we had a lot of misinformation, but it didn't result in actually any harm. He didn't, he wasn't able to, you have to show that he actually lost a job opportunity. On remand in Spokio too, here's what Judge O'Scanlan said about this. We have explained why in the contest of the FACRA, the alleged intangible injury is itself concrete. Is itself concrete. It goes on to say, it is of no consequence how likely Robbins is to suffer additional concrete harm as well, such as the loss of a specific job opportunity. And it cites Justice Alito's opinion, which says that once you meet the requirements of the statute, once you determine that the legally protected interest is concrete, so long as you meet that right and it is tethered, it is not divorced from the harm that you're trying to obtain from the statute, no more is required. We know that also from the FOIA cases. The FOIA cases are an intangible right. It is an intangible right to records. One thing that you'll never hear in a FOIA case is, well, how are you damaged? How are you, how are you, how has your economic damage been impacted by this? That is what you'll never hear in a FOIA case. Why? Because you look to the harm that Congress was trying to protect. Once you meet that, no further requirement is required. The harm that you're trying to protect is the right of the employee to control the release of information. And the question is, did this particular, in this particular case, did it affect it in a meaningful way? Did it undermine that right in a meaningful way? And I point out again that in Said, the court, and I'm not going to read the whole thing, but it seemed to me the court was particularly concerned about the fact that the defendant, that the employee testified that if he had been given the proper notice, notification, he would not have signed it. If you're right, I don't know why you put in an affidavit. The intangible right is. In fact, why did you put in an affidavit? And I want to get back to the affidavits because they involve a separate issue, but they trouble me that they're identical. And one of them that Judge Smith alluded to was, seems to me to have been false. And inconsistent with all of them, whether they're sham affidavits or not, are not precisely, do not precisely echo the depositions. I'll end with this. I see my time is up. The intangible injury is the economic and reputational concerns that Congress had when it enacted the Fair Credit Reporting Act in 1970. That is the concern that the Supreme Court said, we have to shift our opinion. That's what Judge O'Scanlan said in the case you alluded to. But that was a case like defamation and libel. It goes back to the common law. And that's where the reputational interest was affected. Here, they didn't say that if they had known, if they hadn't been confused, I don't even know if they, in their deposition testimony, that they said they were confused. Confusion is not required because it is an additional harm. The Supreme Court has said that no additional harm is necessary. Now we are coming back and telling the Supreme Court, no, some additional harm is necessary. We believe that violates what Judge Alito was saying in Spokio. He says once you meet that right, no additional harm, no confusion, no physical injury, no emotional distress, nothing else is required. Nothing else means nothing else. So the inquiry for this Court is to determine whether the notice and authorization provisions here go to the heart of what Congress was trying to protect. Why did you submit this affidavit then? If you're right, you win automatically, right? You win automatically because on a single document they gave him, they asked for his permission and they also asked for the waiver. And if you're right, that's the end of the discussion. We did it to engage an argument that was made. Our primary argument was is that under Spokio you don't need to do this analysis. The problem was is that the court underneath undertook an improper analysis under Spokio. Spokio does not look to the individual. It is a class-by-class, individual-by-individual analysis. If you go to footnote 8 in the opinion, Justice Alito explains very clearly that while the zip codes were not tethered to the type of harm being alleged, that under footnote 8 it says other types of harm are going to be up to the Ninth Circuit to determine. What does he mean by type of harm? That is not my word. That is what the Supreme Court used. In other words, you don't look to the individual. You look to the type of harm that's being alleged. So long as the type of harm being alleged is the type of harm that the Congress intended to protect, that is enough to have a legally protected interest in a concrete right. Why, if you're right, and in that case I think it was not disputed that there were false, that was the case where they gave false negative information, could you tell me why it was remanded to the Ninth Circuit? It was remanded to the – Spokio 1? Yeah. Spokio 1 was remanded to determine whether the concreteness – what the Supreme Court says is that the Ninth Circuit elided its requirement. I've lost track of 1, 2, and 3, but go ahead, I'll take it. It said that it merged the requirements for concreteness and particularity. And in that case, it remanded to the Ninth Circuit to determine on its own as to whether this statute met the concreteness test. We know it's – the particularity is there. We know that these notice and provisions were Ruiz's, for example. It was Mr. Robbins' credit report that was inaccurate. There was no question as to particularity. The question was, was this a concrete harm? It wasn't. On your theory, it was obviously concrete. Well, that's what Justice Ginsburg and Justice Sotomayor said in dissent. But the majority said we will leave it up to the Ninth Circuit to determine. And indeed, the Ninth Circuit, O'Scanlan did look at that. And on a category, type-by-type basis, they say that reputational harm under 1681A now is the type of harm that meets Article III standing. And nothing further needs to be shown. Mr. Robbins does not have to show. That case totally is different because in the case, if my recollection is correct, that Judge O'Scanlan wrote in, the information was obtained for a purpose that was not permitted under the statute. Your Honor, we're talking about the analysis. The legal analysis that has to be done to determine whether there's Article III standing. Article III standing can come from various places, as we all know. It can come from the statute. I mean, it can come from the Constitution. It can come from common law. But it can also come by statute. Intangible rights are those rights that are confirmed by statute. So when the Court comes in to determine whether under Article I Congress exceeded its authority because under Article III we need a case in controversy, we look to see whether there's an injury in fact. In Luan, the Court was very specific. An injury in fact means an invasion to a legally protected interest. Interest is what the U.S. Supreme Court was asking to look at. What is the interest of Congress? So long as it is an interest that you believe is concrete, no additional harm is required. I thank you for your time. Yes. We'll give you a minute for rebuttal. Let's hear from your opponent. Good morning, Your Honors. Andrew Sommer, counsel for the Appellee Shamrock Foods Company. May it please the Court. In briefing and in oral argument, plaintiffs take the vacillating positions on the question of standing for FCRA informational claims. The plaintiff first claims that under Said, applicants have standing wherever they can show an FCRA informational violation. Nothing more is required is what they're saying. That is not what Said stands for. Then plaintiffs, as the Court has already noted, seemingly concede in a different breath that they bear an evidentiary burden upon summary judgment to demonstrate a concrete harm. And then they claim that the declarations and the deposition excerpts they offer meet this burden. However, the declarations that are referenced were never offered in the excerpts of the record to this Court. In fact, the declarations that were offered were the declarations in support of the class certification motion. They don't even address the issue of standing by any stretch. Then the plaintiffs rely on deposition excerpts that are parsed and taken out of context and do not show that they suffered any concrete harm in connection with the disclosure and authorization forms each one of them signed. On the first point, an FCRA informational claim, a loan, a violation, a loan is not sufficient to show Article III standing. But they've got to show then that they're deprived of the ability to meanfully authorize the procurement of the report, right? Correct. Under Said? Under Said, the Said Court found that a failure or inability to meanfully authorize the procurement of the consumer report. So if we're looking at meanfully authorize the procurement, if in fact the declarations seem to suggest that the disclosure, they were confused as to what they were authorizing when they authorized Shamrock to procure those reports, it would seem to me that at that point one has established standing. Under the Said decision, based on those specific facts, confusion was an element for the purposes of establishing a concrete harm. So, therefore, it would seem then Torres and Guerrero would have standing based on their declarations? No. Well, there's this. I mean, if they are deprived of the ability to meaningfully authorize the procurement and they're confused about what the reports really say, isn't that enough? No, Your Honor. As for the declarations, assuming they, there's a question of their evidentiary value. Well, I understand that. But I tried to read, I mean, we're here on summary judgment. We're here giving every benefit of the doubt to the nonmoving party. And I'm looking at then what is the standard, deprived of the ability to meanfully authorize, and I look at what they've averred in their declaration, and it seems to me that they're saying they were confused as to what they were authorizing based on what was in that. Now, I put Ruiz to the side because he doesn't even claim the same problem. He signed his FCRA disclosure at a different time. But I'm having a tough time seeing on summary judgment why at least Torres and Guerrero would not have standing. Well, you know, as the Supreme Court held in the Lujan decision, the nonmoving party, the plaintiff, on summary judgment must adduce specific facts. Well, I understand. And the specific facts are they're confused as to what they were authorizing when they authorized Shamrock to procure the consumer reports. That's, in fact, what they're affying to. The declarations were talking about the job application process generally, and then they contradict their own deposition testimony where both Torres and Ruiz, excuse me, Torres and Guerrero specifically stated that they never reviewed the disclosure authorization form when they completed it. There wasn't, unlike the plaintiff and Said, there wasn't any confusion when they reviewed that form and had there been no liability waiver. In the case of Said, the allegation the court found showed that the plaintiff would not have signed the authorization form had it not contained the liability waiver. Here, there's no facts that would give rise to any such conclusion like that. They didn't even review the forms. We're on summary judgment. We're not at the motion to dismiss stage. They have a burden to a proper fact supporting the standing. Okay. Let's move to the statute. I mean, I don't want to take away from your questions if you want to have any, but let's move to the statute limitations problem. Who has the burden of proof on the statute limitations? Well, the defendant would, Your Honor. So you're claiming then you have that burden? Oh, I'm sorry. The plaintiffs would have the burden. I mean, I would have thought you would have said they had the burden. No, no. When you said you have the burden, I thought, well, good. I appreciate that catch, Your Honor. They have the burden, and I'm thinking it's an affirmative defense, but it is the burden, of course, of the plaintiffs. When we look at this, I mean, I'm talking about the statute limitations. Ruiz's claim, I think, would be barred by the five-year statute. It seems pretty clear because he filed his claim more than five years. But how do I get Guerrero and Torrance under that statute? Well, for those two, and the statute of limitations issue is secondary. Are we really on? Let's talk about Guerrero. Is there a two-year, can I find that Guerrero filed his claim more than two years after he should have discovered the violation? Correct. When the Torres and Guerrero applied for employment, they were informed that the employment would be contingent upon them completing the background check. Well, in Guerrero, it was much more than that. First of all, his job offer stated, among other things, that it was conditioned on the results of obtaining a number of things, including a consumer report. And he also testified in his deposition that at the time he received the job offer, he would be subject to a background check. My colleague stole my question right out of my mouth. How can we suggest, then, that that would have been the case? The two plaintiffs were on notice that a background report was issuing. Well, that isn't exactly the way it was for Torres. Torres had a different situation than Guerrero. My colleague adequately suggested what Guerrero's problem was, and it was right there. But in Torres, he had no idea that this was a part of the whole when the paperwork came to him. It came later. It's adduced through the Declaration of Randy Bears and other evidence in the record, but the process was the same for all employees during that period, where they would be placed on notice that a background report would be issued in connection with their hiring, and they would complete the disclosure and authorization form. But just a minute. Under Guerrero's job offer, it was one way. But unlike it, Torres's job offer doesn't explain what would be included. It just says it would be a background check, and Torres testified that Shamrock never clarified what this background check would entail. That's ER 9394. So if I view that evidence in the light most favorable to Torres, then I'm having a tough time understanding why Torres knew or should have known. Can you answer that question? Because that seems to me this is unlike Guerrero's job offer. Torres's offer doesn't explain what was in the background check. So why is it that his statute would have run? The standard is that you discover that a violation, that there is a violation, which would be the issuance of a report in this instance. Well, I mean, under Guerrero, there's no question, as my colleague has pointed out, the consumer report was right there. No question he would have known that was what they were going to use. But that wasn't there in Torres's situation. The language wasn't there. It wasn't there at all. So how would he know? Viewing the light most favorable to your opposition. And the standard for discovery purposes is discovering the violation, the issuance of the consumer report, not necessarily what the report entails or the logistics of it, it's just that a report is issued. There was nothing in Torres's job offer which said that the background check would include the consumer report. Only in Guerrero's job offer. Right, but it is otherwise referenced in deposition testimony and the declaration of Randy Baer's, the process that is employed at Shamrock Foods. I mean, reading the documents and what they got, I can hear your argument for a two-year statute on Guerrero, but I'm trying to pin you down now again. Why is Torres subject to the same thing? There was nothing in there that said there would be this consumer report necessary for the background check in the offer. And, you know, again, it's the overall process at Shamrock Foods that's adduced through the evidence. There's no testimony by Torres that he was unaware of the consumer report ever issuing. The test is whether there's actual or constructive notice, and at a minimum here there's constructive notice. Well, how is the constructive notice? I mean, we're not here on the Court having looked at everything and making a determination. We're here on a motion where I'm giving every intent of the fact to the opposition. It's the fact that the plaintiff, that Mr. Torres, has knowledge that a consumer report is issuing would be either actual or constructive notice of that violation under the statute of limitations claim. I understand your argument. Okay. Thank you, counsel. You're above your time at this point. Let's put a minute on the clock, if we could, for counsel for plaintiffs. The problems that Judge Smith and Judge Corman identified are precisely the issues that the Congress was concerned with. In 1970 when they passed the Fair Credit Reporting Act, they realized 26 years later that no one was complying with it. They realized that there was rampant credit reports that were inaccurate. At least I think I understand all of that. I want to go to one issue that particularly troubles me, and that is, first of all, whether Ruiz's affidavit was truthful. Let me talk about that. I'm bothered by the fact that there were three identical affidavits, that one of them was obviously not true, and I'm concerned about I have some sympathy for Judge Wilson's suggestion regarding the value and validity of the evidence that you've produced. I will address your issue, and then I'll tell you why the focus, again, I think is on the wrong point. I know that argument. Okay. When you're talking about confusion, it is very difficult for people to understand why they're confused. If you ask people why they're confused, they can't explain it, precisely because they're confused. Well, for example, Torres said he did not understand the language of the employment application requesting authorization for Shamrock to obtain results of his alcohol and drug tests. Correct. That's not relevant here. No, none of that is relevant. And, in fact, if you take a look, can we go back to Luana? No, no, I mean it's not relevant because you wouldn't get it from a person who collects or dispenses financial information. Your Honor, with respect, when we look at Article III standing, the test for Article III standing does not depend on the particularities of any one person. It depends on the class of individuals. It depends upon what Congress was doing. In Luana, as a matter of fact, to address the declaration issue about he wouldn't have signed if he had known, here's what the court said. And I'll quote from footnote 7. It said the plaintiff, quote, never has to prove that he has received a procedure, that if he had received the procedure, the substantive result would have been altered. You never have to prove that for Article III standing. Why? Because it focuses on the individual. All of the problems that we've identified with Judge Wilson could be alleviated if the focus was instead, and I urge the court to look at Spokio too, and I urge them to look at the court at NIAB, because both those decisions are on point. If we look to see what the Congress was doing and what type of harm was the Congress trying to protect, that is the Article III standing. Once you do that, no more is required. To the extent Said demands that confusion is required, that is not consistent with Spokio. In Spokio, Justice Alito was very clear. That is the basis of the decision. That is the basis for Justice Stevens' decisions in the reporter's case, the Freedom of Information Act cases, where it is an intangible, concrete interest. You don't have to show you're confused. Those are the questions you would never hear a court ask on an Article III case dealing with a Freedom of Information Act case. You know, how are you harmed? What are your damages? Your argument is that you automatically win just simply because on one sheet of paper there was the provision to authorize the release of the information and, two, there was a provision regarding waiver of liability. Not exactly, Your Honor. Automatically win. You're talking about the merits of the FACWR case. I'm talking about what you need for Article III standing. No. That automatically establishes standing? No, no. with where there is extraneous information on a FACWR form. The Supreme Court has made this clear. When you look at Article III standing, you look to the statute and the type of harm it's being meant to protect it. Here we're trying to protect, Congress is trying to protect people's ability to maintain their private information and to provide authorization for it. We have a right. It has long been known in common law that you have a right to your property interest, even if it causes no actual harm. The concept of being able to tell someone, get off my lawn, you have a right to your property. You have a right to withhold permission for anybody to come on that property. If someone does come on that property, you have a right to sue them in common law, even though they did no harm whatsoever to that property. Why is that? Because the legally protected interest, as Luan teaches us, is the interest that we're looking at. The interest, the interest, the interest, or the injury. We look to see what Congress is doing. The analysis that Judge Wilson had by going down this line and requiring declarations and confusion and everything that Said says is completely contrary to the Spokio analysis. It cannot be done that way. This is what Said said. First of all, Said said that he never knew that he signed the document. The first time he discovered it was when he looked through his files. And then the court said, drawing all inferences in favor of an onmoving party, we can fairly say that Said was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure required by the statute. Therefore, Said alleged a concrete injury. To the extent you have not said that. We don't agree with that, Your Honor. What I regard to be, I'm really troubled by these affidavits, one of which was false. But they don't say, and what they say is, I do not know if I would have signed the documents. And we know in the real world, not that this is directly relevant to the legal issue, they had no choice if they wanted the job. Your Honor, once you meet the statutory requirement and the court determines that it is a legally protected interest, no more is required. These are the arguments that Spokio made to the U.S. Supreme Court and were rejected. You do not have to show confusion. You do not have to show injury. You do not have to show that had you known your rights, you would have signed something different. There is no requirement of that. And to the extent Said demands such, it is inconsistent with Spokio. Justice Alito is clear. It is the only way Article III standing can be analyzed, is on a case-by-case, type-by-type basis. That is not my word. That is in Spokio. I have no questions. Thank you, Your Honor. I'm surprised he spent all his time on standing when we had these other good questions. But I think his time's run. It has. Thank you very much, Counsel. The case just argued is submitted.
judges: N.R. Smith, Watford, Korman